Estate of James W. Douglas, Deceased, The International Trust Company, Executor v. Commissioner.
Estate of James W. Douglas v. Commissioner
Docket No. 37044.
United States Tax Court
1953 Tax Ct. Memo LEXIS 314; 12 T.C.M. (CCH) 347; T.C.M. (RIA) 53103; March 31, 1953
*314 Held, in computing the present value of a life interest in a residuary trust, the actual life expectancy and not the present value tables of Regulations 105 should be used where the evidence establishes that the life expectancy is less than that used in the tables. Donald W. Roe, Esq., and Stephen H. Hart, Esq., 350 Equitable Building, Denver, Colorado, for the petitioner. Melvin A. Bruck, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in estate tax in the amount of $27,287.51. The issue to be decided is whether respondent erred in computing the present value of the life interest of Ursula Benedict McPhee in decedent's estate in determining the amount deductible for public, religious, charitable, and educational purposes in computing the Federal estate tax. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Decedent died testate, a resident of the City and County of Denver, State of Colorado, on February 12, 1949. A Federal estate tax return for his estate was filed with the collector of internal revenue at Denver, Colorado. *315 Decedent's will was admitted to probate on April 11, 1949, in the County Court of the City and County of Denver, State of Colorado. The pertinent provisions of such will are as follows: After directing payment of debts, inheritance and estate taxes, and after making certain specific bequests, decedent made certain bequests out of the residue to certain named individuals. By Article Tenth decedent then directed outright charitable legacies totaling $1,750. By Article Thirteenth decedent directed that, after satisfaction of the other charges against his estate, the remaining residue should be held in trust by The International Trust Company on the following terms: The trustee is to hold the trust property under specific instructions relating to sale, investment, and reinvestment, and is to pay from principal and income annually on the first day of January of each year after the creation of the trust the following sums: To Ursula Benedict
$1,000 per year
To Frank Chamard
1,000 per year
To Hazel Day
1,500 per year
To certain charitable or religious
organizations a total of
2,250 per year The payments to the individuals were conditioned upon their surviving the *316 decedent, and payments to each of them were to cease on the date of that individual's death. At the time of decedent's death, Frank Chamard was 46 years of age, and Hazel Day was 51. Ursula Benedict (who at the time of decedent's death and thereafter was known as Ursula Benedict McPhee, and who is hereinafter referred to as Ursula) was 29 years old. She died on September 24, 1949. Ursula had been suffering with chronic ulcerative colitis from about 1938. Prior to September, 1945, she had been a patient at Johns Hopkins Hospital in Baltimore for treatment of such condition, and had had several operations because of the disease. Ursula's condition became progressively worse until her death from the chronic ulcerative colitis. At the time of decedent's death, Ursula had already had over 30 surgical operations because of this disease. She had lost a great deal of weight, required numerous blood transfusions and intravenous feedings, and spent most of her time in the hospital. She was in considerable pain, and her skin was dry and pasty colored because she could not absorb fluids properly. Her case was a particularly severe one and did not respond to medical treatment. At the time of *317 her death, all but 7 feet of the normal 28 feet of intestines had been removed through the numerous operations. At the time of decedent's death, the physicians who were attending Ursula thought that her reasonable life expectancy was somewhere between six months and a year. She died about seven months after decedent's death. In preparing the Federal estate tax return, the petitioner used the present value tables contained in Estate Tax Regulations 105, section 81.10 (i), which are based upon the Actuaries' or Combined Experience Table of Mortality in evaluating the interests of Frank Chamard and Hazel Day, but did not use the tables in evaluating the life interest of Ursula. In his notice of deficiency, respondent used such tables for all three of the residuary life beneficiaries. The life expectancy of Ursula at the time of decedent's death was not more than one year. Opinion RICE, Judge: The issue to be decided is the amount of the deductible charitable remainder interest in the residuary estate. This, in turn, depends upon the correct valuation of the life interests of the residuary life beneficiaries. This question has been presented to the Court in a number of previous *318 cases, and we have held that the use of established mortality tables must give way to the proven facts which show a lower life expectancy. , and cases cited therein. Such cases are controlling in the instant case. Two specialists in internal medicine who attended Ursula testified that her life expectancy was six months to a year. We have found that Ursula's life expectancy at the time of decedent's death was not more than one year, and respondent, therefore, erred in using the tables of mortality appearing in Regulations 105 to compute her life interest. Due to certain uncontested adjustments, and to errors in the computation, agreed to by the parties. Decision will be entered under Rule 50.